The Honorable Richard Alldritt State Representative, 105th District State Capitol, Room 302-S Topeka, Kansas 66612
Dear Representative Alldritt:
You request our opinion on the constitutionality of the amendments proposed in 2000 Substitute for House Bill No. 2581, as passed by the House Federal and State Affairs Committee on Wednesday, January 26, and by the full House of Representatives on Monday, February 7.
Section 1 of the Substitute Bill would amend K.S.A. 1999 Supp. 65-6721
to make it applicable to all stages of pregnancy rather than just post-viability. The Bill also would remove the health exception from the statute so that a partial birth abortion, as defined in the Bill, could be performed only if it is determined that it is necessary to preserve the life of the pregnant woman.
In Roe v. Wade,[1] the United States Supreme Court held in part:
 "1. A state criminal abortion statute of the current Texas type, that excepts from criminality only a life-saving procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourteenth Amendment.
 "(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.
 "(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.
 "(c) For the stage subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for preservation of the life or health of the mother. . . ." 93 S.Ct. at 732.
In Planned Parenthood of Southern Pennsylvania v. Casey,[2] the Court reaffirmed its holding in Roe v. Wade, but a plurality of the Court disavowed the trimester framework, choosing instead to use an undue burden analysis in evaluating pre-viability restrictions on abortion:
 "It must be stated at the outset and with clarity that Roe's essential holding, the holding we reaffirm, has three parts. First is a recognition of the right of the woman to choose to have an abortion before viability and to obtain it without undue interference from the State. Before viability, the State's interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman's effective right to elect the procedure. Second is a confirmation of the State's power to restrict abortions after fetal viability, if the law contains exceptions for pregnancies which endanger the woman's life or health. And third is the principle that the State has legitimate interests from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child. These principles do not contradict one another; and we adhere to each."[3]
Thus, because its provisions apply to all stages of pregnancy, determination of whether Substitute for House Bill No. 2581 is constitutional depends on whether it creates an undue burden on a woman's right to choose abortion. Under the "undue burden" standard, a state regulation that has "the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a non-viable fetus" would be found unconstitutional.[4]
2000 Substitute for House Bill No. 2581 defines "partial birth abortion" in Section 1(b). Paragraph (1) of Section 1(b) describes the procedure that the Bill prohibits and paragraph (2) sets out what is not prohibited.
In three recent decisions, the United States Court of Appeals for the eighth circuit held that the partial birth abortion laws in Nebraska, Arkansas and Iowa were unconstitutional because they placed undue burdens on a woman's right to choose abortion prior to viability of the fetus.[5]
In all three cases, the Court rejected arguments that the statutes were intended to prohibit only the D X abortion procedure, finding that the language of all three statutes was broad enough to include versions of the D E procedure as well. Because the D E procedure was involved, and because that procedure was found to be "the most common method of abortion during the second trimester," each statute was found to create a substantial obstacle to obtaining an abortion. The United States Court of Appeals for the sixth circuit has issued a very similar decision regarding an Ohio statute ostensibly banning the use of the D X procedure,[6]
as have several federal district courts.[7] On the other hand, the United States Court of Appeals for the seventh circuit has recently upheld statutes in Illinois and Wisconsin that ban certain partial birth abortion procedures. In Hope Clinic v. Ryan,[8] the Court chose to uphold the statutes under an assumption that they would only be enforced in situations where a D X procedure had been performed; the Court directed the district court, on remand, to issue restraining orders preventing enforcement in situations involving use of the D E procedure.[9]
Although the seventh circuit took a different course, it agreed with the sixth and the eighth circuit appellate courts that if the statutes were enforced so as to prohibit the D E procedure in pre-viability situations, they would clearly be unconstitutional.[10] We have located no cases that stand for the proposition that the D E procedure can constitutionally be prohibited prior to viability of the fetus. We note that the United States Supreme Court has accepted certiorari in the Nebraska case, Carhart v. Stenberg, will be hearing oral arguments in April and most likely rendering a decision in August. Thus, the issue you present may very well be resolved with that decision, although because the Kansas statute is not identical to any of the other statutes yet considered by the federal courts of appeal, the decision may have only tangential effect on our situation.
The definition of partial birth abortion in 2000 Substitute for House Bill No. 2581 does not reference most of the steps in the D X procedure as it is defined by the ACOG and the courts. The Bill's attempt to permit the more common D E procedure does not cure the problem because its description of a D E in Section 1(b)(2) is more limited than most courts have found the procedure to be.[11]
While a court could take the path chosen by the seventh circuit court of appeals and uphold the definition found in 2000 Substitute for House Bill No. 2581 by ruling that it cannot be applied in any situation involving a D E procedure, we believe it is more likely the court would find that the term "partial birth abortion" is defined in the Bill in such general terms, and the exception for D E defined so narrowly, that some versions of the D E procedure are included within its prohibition thus rendering it a substantial obstacle and unconstitutional because it applies to all stages of pregnancy, rather than just post-viability. As stated by the federal district court in Eubanks v.Stengel:
"[T]he Court cannot simply ignore the legislature's statutory definition of the prohibited conduct in favor of one which is nowhere referenced in the Act. This is particularly true when the General Assembly refused to adopt a more precise definition describing the D 
X."[12]
Finding that the Bill's definition of partial birth abortion renders it unconstitutional does not mean that the current legislation is likewise tainted. Current partial birth abortion law in Kansas applies only post-viability — triggering a different test under Casey — and contains a maternal health exception. As such, we believe it would survive a constitutional challenge of this sort.
We note that 2000 Substitute for House Bill No. 2581 has a severability clause stating that "if any word, clause, phrase or other provision of subsections (b) through (f) of this section or the application thereof to any person or circumstance is found to be unconstitutional, the same are hereby declared to be severable and the other provisions of this section shall remain effective notwithstanding such unconstitutionality. . . ." The definition of partial birth abortion is contained in subsection (b) of the Bill. However, if the Bill passed as is and the definition is later struck, the statute would continue to prohibit partial birth abortion throughout all stages of pregnancy without regard to maternal health. The Bill would then have the constitutional problem of vagueness for lack of any definition of the prohibited practice. Thus, we do not believe the severability clause saves the Bill in this instance.
Because we have concluded that the Bill is unconstitutional based on its definition of partial birth abortion, it is not necessary to determine whether it is also unconstitutional by virtue of the fact that it does not contain a maternal health exception. We note that there are cases determining this issue, but do not address it here.[13]
In conclusion, while a court could choose to uphold the definition of partial birth abortion found in 2000 Substitute for House Bill No. 2581 by ruling that it cannot be applied in any situation involving a D E procedure, we believe it is more likely the court would find that the term "partial birth abortion" is defined in the Bill in such general terms, and the exception for D E defined so narrowly, that some versions of the D E procedure are included within its prohibition thus rendering it a substantial obstacle and unconstitutional because it applies to all stages of pregnancy, rather than just to post-viability.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm
[1] 410 U.S. 113, 35 L.Ed.2d 147, 93 S.Ct. 705 (1973).
[2] 505 U.S. 833, 120 L.Ed.2d 674, 112 S.Ct. 2791(1992).
[3] Supra, note 2, 112 S.Ct. at 2804.
[4] Jane L. v. Bangerter, 102 F.3d 1112 (10th Cir. 1996), quotingCasey, 505 U.S. at 877, 112 S.Ct. at 2820.
[5] Carhart v. Stenberg, 192 F.3d 1142 (8th Cir. 1999), cert. granted120 S.Ct. 865, 68 USLW 3338 (U.S. Jan. 14, 2000); Little Rock FamilyPlanning Services, P.A. v. Jegley, 192 F.3d 794 (8th Cir. 1999); PlannedParenthood of Greater Iowa, Inc. v. Miller, 195 F.3d 386 (8th Cir. 1999). Each of these cases, and those that follow, refer to the American College of Obstetricians and Gynecologists (ACOG) definition of the D 
X procedure and we incorporate it by reference. The Kansas Legislature considered this definition during its consideration of partial birth abortion in 1997. See 1997 Senate Bill No. 234, as amended by Senate Committee and as amended by Senate Committee of the Whole.
[6] Women's Medical Professional Corp. v. Voinovich, 130 F.3d 187
(6th Cir. 1997).
[7] Causeway Medical Suite v. Foster, 43 F. Supp.2d 604 (E.D.La. 1999); Planned Parenthood of Central New Jersey v. Verniero,41 F. Supp.2d 478 (D.N.J. 1998); Eubanks v. Stengel, 28 F. Supp.2d 1024
(W.D.Ky. 1998); Hope Clinic v. Ryan, 995 F. Supp. 847 (N.C.Ill. 1998);A Choice for Women v. Butterworth, 54 F. Supp.2d 1148 (S.D.Fla. 1998);Evans v. Kelley, 977 F. Supp. 1283 (E.D.Mich. 1997).
[8] 195 F.3d 857 (7th Cir. 1999).
[9] Id. at 869, 876.
[10] Id. at 861, 869, 871, citing Casey, supra, note 2, and PlannedParenthood of Central Missouri v. Danforth, 428 U.S. 52, 75-79,96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). See also Richmond Medical Centerfor Women v. Gilmore, 144 F.3d 326 (4th Cir. 1998) (case not decided on the merits, but for purposes of issuing a stay).
[11] Carhart v. Stenberg, 192 F.3d at 1146-1148; Little Rock FamilyPlanning v. Jegley, 192 F.3d at 797; Voinovich, 130 F.3d at 198; RichmondMedical Center for Women v. Gilmore, 55 F. Supp.2d 441, 453 (E.D.Va. 1999); A Choice for Women v. Butterworth, 54 F. Supp.2d at 1152-1153;Causeway Medical Suite v. Foster, 43 F. Supp.2d at 608-609; PlannedParenthood of Central New Jersey v. Verniero, 41 F. Supp.2d at 493;Eubanks v. Stengel, 28 F. Supp.2d at 1031-1032. But see Hope Clinic v.Ryan, 195 F.3d at 861; Richmond Medical Center for Women,183 F.3d at 329-330.
[12] 28 F. Supp.2d at 1036. See also, Planned Parenthood of CentralNew Jersey v. Verniero, 41 F. Supp.2d at 492; Hope Clinic v. Ryan,995 F. Supp. 847, 855 n. 1 (N.D.Ill. 1998). See n. 10.
[13] See Summit Medical Associates, P.C. v. James, 984 F. Supp. 1404,1455 (M.D.Ala. 1998); Verniero, supra, note 23 at 497-498; RichmondMedical Center for Women v. Gilmore, 183 F.3d at 306 (dissent).